UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re

       MICHAEL LEVINSON,

                      Debtor.
----------------------------------------------------------x

Case No.: 806-73344-478

Chapter 13

# MEMORANDUM  DECISION AND ORDER

*Appearances:*

                      Pryor & Mandelup, L.L.P.
                      *Attorneys for the Debtor*
                      By: Scott A. Mandelup, Esq.
                      675 Old Country Road
                      Westbury, NY 11590

                      Berkman, Henoch, Peterson & Peddy, P.C.
                      *Attorneys for R & E Property Corp.*
                      By: Bruce D. Mael, Esq.
                      100 Garden City Plaza
                      Garden City, NY 11530

Before the Court is a motion by the Debtor seeking to avoid a certain judicial lien against the Debtor's interest in real property located at 20 Meadow Drive, Woodmere, New York (the "Property") pursuant to 11 U.S.C. § 522(f)(1) on the basis that the judicial lien impairs the Debtor's homestead exemption (the "Motion"). At issue is the appropriate method to value the individual Debtor's interest in the Property for purposes of 11 U.S.C. § 522(f) where the Property is held by the Debtor and his non-debtor spouse as tenants by the entirety.

## FACTS

The Debtor is an optometrist at Levinson & Klayman in which he owns a partnership interest. The Debtor filed his petition (the "Petition") for Chapter 13 relief on December 20, 2006 (the "Petition Date"). The Debtor, along with his wife, owns the homestead Property as tenants by the entirety. Prior to the Debtor's bankruptcy filing, the Debtor obtained an appraisal of the Property, dated October 31, 2006, which values the Property at $900,000. There is no proposal to sell the Property and no divorce action pending.

The Debtor has claimed his $50,000 homestead exemption in Schedule C to the Petition under 11 U.S.C. § 522 pursuant to N.Y. Debt. & Cred. Law § 282 and N.Y. C.P.L.R. § 5206(a) and there has been no objection to the Debtor's homestead exemption. Therefore, the Debtor's homestead exemption is allowed.

On the Petition Date, there were 2 mortgages and 1 judgment lien recorded against the Property. The Debtor has a $50,000 home equity credit line with Bank of New York ("BONY") with a balance due of $16,966.04 on the Petition Date. Chase had

a $20,000 mortgage with a balance of $84.44 on the Petition Date which has since been satisfied in full. The total mortgage liens are $17,050.48. R & E Property Corp. ("R & E") obtained a judgment against the Debtor, and not the wife, in the amount $346,945.45, plus $81,622.34 in interest for a total of $428,576.79. The judgment was docketed on October 10, 2006 in the Nassau County Clerk's Office. Therefore, on the Petition Date, the aggregate amount of the mortgages and R & E's judgment lien totaled at least $445,627.27.

Other than the secured creditors discussed above, the Debtor listed only 2 other creditors in his Schedules to the Petition (the "Schedules") – BONY and Verizon Wireless with general unsecured claims of $7,500 and $345.11 respectively. According to the Debtor's statements of current income and expenses under Amended Schedules I and J to the Petition, the Debtor has a monthly net income of $2,795.71. Based upon the foregoing, it would appear that the Debtor's only major creditor is R & E.

In support of his Motion, the Debtor obtained an actuarial report dated December 2, 2006 which states that based upon (i) the fact that the Debtor is 3 years older than his wife, (ii) the rate of return on long term investments being at 6.5% as of November 2006 and (iii) the fact that neither the Debtor nor his spouse is receiving any disability payments, the present value of the Debtor's interest in the Property, using a valuation date of November 1, 2006, is $103,706.10. Accordingly, based solely on this actuarial report, the Debtor asserts that he only has an 11.52% interest in the Property rather than a 50% interest. Using a value of $103,706.20, the Debtor submits in his Motion that total equity in the Property available to lien creditors after accounting for the 2 mortgages and

his homestead exemption is $36,655.62. Therefore, R & E's judgment lien should be avoided to the extent the amount of the lien exceeds $36,655.62.

R &E objected to the Debtor's Motion on the basis that, *inter alia*, the Debtor's use of actuarial values to determine the interest of a tenant by the entirety in property was improper and grossly undervalues the Debtor's interest in the Property. R & E argues that the Debtor's interest in the Property is 50% or $450,000 because the interests of tenants by the entireties are equal as set forth in *Popky v. United* States, 419 F.3d 242 (3d Cir. 2005). In *Popky*, the Third Circuit rejected the use of life expectancies derived from actuarial tables in calculating the interest of a tenant by the entirety in real property as speculative and held that under Pennsylvania law, the interest of a tenant by the entirety in proceeds from the sale of property is 50%. Under this argument, should R & E's judgment lien with respect to the Property be avoided, the judgment lien should be reduced only by $45,627.27 ($445,627.27 + $50,000 - $450,000), leaving R & E with a judicial lien in the amount of $382,949.52. In any event, R & E argues that its judgment lien should not be avoided at all even if its judgment lien exceeds the Debtor's equity in the Property under the § 522(f) calculations because the Debtor has non-exempt personal property to which the judgment lien can attach.

In his Reply, the Debtor noted that the *Popky* decision dealt with the determination of a debtor's interest in property under Pennsylvania law and not New York real property law nor did the case arise in New York. Moreover, the Debtor argues that courts in the Second Circuit have rejected the principle that a tenancy by the entirety interest should be valued at 50% and have used actuarial analysis to value a debtor's tenancy by the entirety interest in property although such analyses are in the context of a

3

debtor's interest in proceeds arising from a sale of property under 11 U.S.C. § 363(h). According to the Debtor, the use of actuarial tables under § 363(h) should be applied to a § 522(f) calculation because (1) no buyer will be willing to purchase his interest in the tenancy by the entirety property because his non-debtor spouse remains in possession of the Property and (2) it is likely that his spouse will succeed to the entire interest in the Property because the spouse would likely survive the Debtor based upon the actuarial tables. Even if the Debtor did survive his spouse, given the general life expectancies in the United States, R & E would need to wait some 15 or 20 years because a judgment lien creditor cannot sell the Property held by tenancy by the entirety when the judgment is only against one spouse and the creditor cannot sell the Debtor's possessory interest in the Property. Accordingly, the Debtor argues that he only has a survivorship interest in the Property which is valued at 11.52%.

A hearing on the Motion was held on June 26, 2007 at which counsel for the Debtor and R &E appeared. There was no evidence presented as to the facts in the event a § 363(h) hearing would apply. This memorandum decision memorializes and modifies the Court's decision on the Motion delivered at the hearing.

## DISCUSSION

### I.  Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (O).

**II.     Avoidance of Lien**

Under 11 U.S.C. § 522(f), a debtor may avoid the fixing of a judicial lien on an interest of the debtor in property to the extent such lien impairs the debtor's homestead exemption.  Section 522(f)(2)(A) provides that a lien shall be considered to impair an exemption to the extent that the sum of:

(i)     the lien;
(ii)    all other liens on the property; and
(iii)   the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

The purpose of § 522(f) is to protect a debtor's exemption, his discharge and his fresh start by permitting him to avoid a judicial lien on any property to the extent that the property could have been exempt in the absence of the lien.  S. Rep. No. 95-989, at 76 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5862; H.R. Rep. No. 95-595, at 126-127 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6087-6088.   However, lien avoidance is not an "all or nothing matter." *In re Barrett*, No. 06-20294, 2007 WL 1544658, at *2 (Bankr. D. Me. May 29, 2007).  Rather, "[t]o the extent that a judicial lien does not impair a debtor's exemption, it cannot be avoided." *In re Barreto*, No. CV 06-04591(ADS), 2007 WL 1827425, at *5 (E.D.N.Y.  June 25, 2007) (citing *In re Barrett*, 2007 WL 1544658, at *2).  *See also*, *FDIC v. Finn* (*In re Finn)*, 211 B.R. 780, 783 (B.A.P. 1st Cir. 1997); *Bank of American Nat'l Trust and Sav. Ass'n. v . Hanger (In re Hanger*), 217 B.R. 592, 596 (B.A.P. 9th Cir. 1997).

While § 522(f) does not specify the operative date for purposes of applying the formula to determine whether a lien impairs an exemption, 11 U.S.C. § 522(a) defines

"value" for purposes of § 522 as "fair market value as of the date of the filing of the petition...." Accordingly, the petition date has been held to be the operative date for all § 522(f) determinations, including determinations regarding the value of the debtor's property and the value of the liens. *In re Wilding*, 475 F.3d 428, 432 (1st Cir. 2007); *In re Bradley*, No. 01-35118, 2007 WL 1492457, *3 (Bankr. S.D.N.Y. 2007); *In re Pacheco*, 342 B.R. 352, 357 (Bankr. D.N.M. 2006)(stating that the value of the liens, the value of the property and the amount of the exemption are all measured as of the petition date); *In re Salanoa*, 263 B.R. 120, 123 (Bankr. S.D. Cal. 2001) ("The Court must value the residence and the Debtor's entitlement to an exemption on the petition date. As the amount of the liens is relevant to these determinations, it makes sense to value the liens on the same date."). In performing the mathematical calculation under § 522(f), "all numbers in the calculation should have the same operative date." *In re Blue*, Slip Copy No. 04-03781-PCW7, 2006 WL 3077418, *3 (Bankr. E.D. Wash. 2006). Accordingly, the value of the Debtor's interest in the Property for purposes of § 522(f) should be calculated based upon the fair market value of the Debtor's interest in the Property determined on the Petition Date.

The determination of the value of the Debtor's interest in the Property, however, is a function of New York law as the Property is located in this state. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914 (1979). The bundle of rights associated with a tenancy by the entirety is rooted in ancient common-law principles. "Tenancy by the entirety has always been a form of real property ownership available only to those who were actually married at the time of conveyance. At common law, husband and wife were deemed a single legal entity, and a conveyance of property to both created an indivisible interest so

that both parties were deemed seized of the whole." *V.R.W., Inc. v. Klein*, 68 N.Y.2d 560, 563, 510 N.Y.S.2d 848, 850, 503 N.E.2d 496, 498 (1986)(internal citations omitted). A tenant by the entirety has a "right to the use of an undivided half of the property during the joint lives of a husband and wife and a survivorship right to the entire fee. Each tenant by the entirety is said 'to be seized of the whole estate, and [such tenants] do not take by moieties…'" *Community Nat'l Bank and Trust Co. of New York v. Persky (In re Persky)*, 893 F.2d 15, 19 (2d Cir. 1989) (citing *Hiles v. Fisher*, 144 N.Y. 306, 312, 39 N.E. 337 (1895)). As long as the marriage remains legally intact, the husband and wife continue to be seized of the whole, and the death of one merely results in the defeasance of the deceased spouse's co-extensive interest in the property. *V.R.W., Inc. v. Klein*, 68 N.Y.2d at 564, 510 N.Y.S.2d at 850, 503 N.E.2d at 498. Where husband and wife hold property in a tenancy by the entirety as if they were one person and one person dies, the surviving spouse takes the entire estate, *not because of any right of survivorship, but because that spouse remains seized of the whole. In re Rerisi*, 172 B.R. 525, 529 (Bankr. E.D.N.Y. 1994); *Matter of Estate of Violi*, 65 N.Y.2d 392, 395, 492 N.Y.S.2d 550, 553, 482 N.E.2d 29, 32 (1985) (emphasis added).

In New York, "each tenant may sell, mortgage or otherwise encumber his or her right in the property, subject to the continuing rights of the other." *V.R.W., Inc. v. Klein*, 68 N.Y.2d at 565, 510 N.Y.S.2d at 851, 503 N.E.2d at 499. *See also Goldman v. Goldman*, 95 N.Y.2d 120, 122 (N.Y. 2000). Accordingly, because their respective interests are the same and equal during their joint lives as husband and wife, each is entitled to an equal share in the consideration given for the deed and entitled to one-half of the proceeds of the sale of the real property. *Secrist v. Secrist*, 284 A.D. 331, 334, 132

N.Y.S.2d 412, 415 (N.Y. App. Div. 4th Dep't 1954), *aff'd*, 308 N.Y. 750, 125 N.E.2d 107 (N.Y. 1955) (finding that the wife was entitled to 50% of the proceeds of sale even though the husband contributed the entire purchase price). Thus, the interest of a tenant by the entirety in real property continues even if the other tenant divests or encumbers his or her interest in the property without the consent of the former.

Because a tenant by the entirety is "seized" of the whole estate as of the time of the conveyance and tenancy by the entirety survives the filing of a petition in bankruptcy under New York law, this Court has previously found that a debtor that holds real property by tenancy of the entirety holds an interest in the entire property on the petition date. *In re Rerisi*, 172 B.R. at 529 (finding that a debtor was "seized" of the whole estate in four properties held by tenancy by the entirety at the time of conveyance, a date prior to the petition date, and that the debtor's interest in those properties passed to the Chapter 7 Trustee as of the petition date, notwithstanding the death of the non-debtor spouse ten months after the petition date). Accordingly, under New York law, the Debtor is "seized" of the entire Property and for purposes of § 522(f), the value of his interest in the Property, in the absence of any liens, is equal to the fair market value of the Property or $900,000.

This result is consistent not only with New York law, but also with the decisions of other courts which have analyzed this issue in the context of § 522(f) where the relevant states have similar laws concerning tenancy by the entirety. In *Brinley v. LLP Mortgage, Ltd. (In re Brinley)*, 403 F.3d 415 (6th Cir. 2005), *cert. denied*, 126 S.Ct. 1164 (2006), the debtor appealed the District Court's decision which avoided a judgment lien in full under § 522(f) on the ground that the District Court erred by considering the entire

value of his property when making the § 522(f) calculations because he owned the property as a tenant by the entirety with his non-debtor spouse and the court should have only attributed half of the value of the property to him.  In analyzing tenancy by the entirety under Kentucky law, the Sixth Circuit stated that a tenancy by the entirety "is an estate in land shared by husband and wife, whereby at the death of either the survivor is entitled to full fee simple ownership.  The survivor takes the entire estate at the death of the deceased co-tenant *not* by virtue of that death, but because, in law, each was viewed as to own the *entire* estate from the time of its creation." 403 F.3d at 420 (internal citations omitted).  Accordingly, the Sixth Circuit held that the debtor was properly charged with the full value of the property when the District Court conducted the lien avoidance calculation under § 522(f).

Similarly, in *Snyder v. Rockland Trust Company (In re Snyder)*, 249 B.R.40, 46 (B.A.P. 1st Cir. 2000), the Bankruptcy Appellate Panel (the "Panel") affirmed the bankruptcy court's ruling that for purposes of § 522(f), the debtor's interest in tenancy by the entirety property under Massachusetts law should be valued at 100% where the non-debtor spouse did not join in the petition.  Under Massachusetts law, as set forth in *Snyder*:

> [a] tenancy by the entirety is a form of concurrent ownership that can exist only between co-owners who are husband and wife.  In such a tenancy, husband and wife 'are seised of the estate so granted as one person, and not as ordinary joint tenants or tenants in common.'  Therefore, husband and wife hold the property not as 'two tenants by the entirety,' but as one person, in one tenancy.  The point is more than semantic; it underscores that a tenancy by the entirety is a 'unitary title':  a title in which the interests of both husband and wife extend to the whole of the property, not merely to some fractional interest that the other does not also hold.

9

> Each spouse's interest in and rights as to the whole are well-protected from compromise by the other. For as long as the marriage continues, the estate cannot be severed, terminated, or partitioned by either spouse without the assent of the other. Either spouse may convey or encumber his or her own interest, but the interest so conveyed would be subject to the continuing rights of the other in the property such that the interest conveyed would, among other things, be wholly defeasible upon the death of the conveying spouse and survivorship of the other….A tenancy by the entirety 'continues during the existence of the marital relationship and cannot be changed except by death, divorce, a deed of both parties of a deed of one spouse to the other.'… [T]he extent of one spouse's interest in property held in a tenancy by the entirety is not fixed but contingent on (among other things) future events that determine how the tenancy is terminated and when it is liquidated.

249 B.R. at 44-45 (citing *In re Snyder*, 231 B.R. 437, 441-443 (Bankr. D. Mass. 1999)(internal citations omitted).

The Panel found "that a hearing on a motion to avoid a lien pursuant to section 522(f), much like a hearing on a motion for relief from the automatic stay, should be a summary proceeding susceptible to a quick and binding resolution. To adopt a procedure for actuarially analyzing the [debtor's] interest in the tenancy by the entirety does not fit into this mold, and the Panel rejects it. Indeed, such a procedure would require in each instance a determination of the [debtor's] interest based on age, sex, health and all other factors that go into making that type of actuarial determination of value." *Id.*, 249 B.R. at 46. In addition, "[o]ne of the principal tenants of bankruptcy is finality in order to insure the honest debtor a fresh start." *Id*. By fixing the value, the calculation under § 522 will not be subject to a possible subsequent hearing when an event occurs which would terminate the tenancy. Accordingly, the Panel agreed that the debtor's interest in tenancy

by the entirety property should be valued at 100% for purposes of § 522(f). *See also*, *In re Strandberg*, 253 B.R. 584, 589 (Bankr. D.R.I. 2000)(following *Snyder* in holding that a debtor's interest in tenancy by the entirety property under Rhode Island law is 100% for purposes of §522(f)).

      Although the Panel also considered the possibility of treating a tenancy by the entirety as if it were a tenancy in common in which the debtor and non-debtor spouse each has a 50% interest in the property, the Panel rejected the 50% valuation because it did not comport with Massachusetts law which holds that a tenancy by the entirety guarantees that each spouse has an equal right to the whole. *Id.* (citing, *Coraccio v. Lowell Five Cents Sav. Bank*, 415 Mass. 145, 612 N.E.2d 650 (1993)).

      In *Popky*, the United States Internal Revenue Service had assessed taxes against Sheila Popky for unpaid employment taxes attributable to her business and filed a notice of tax lien. Shortly thereafter, Ms. Popky sold her property which she held with her husband as tenants by the entirety. The Popkys argued that Ms. Popky's interest in the proceeds of sale should not be valued at 50% but at a percentage based upon some variation of their life expectancies. Rejecting the use of actuarial values, the Third Circuit valued the interests of tenants by the entireties equally under Pennsylvania common law and held that Ms. Popky's interest in the proceeds of sale was 50%. This result is consistent with general New York tenancy by the entirety law *where a spouse is entitled to one half of the proceeds of sale if the tenancy by the entirety is terminated by a sale of both tenants' interest in the property*.

      In the case before this Court, the Debtor filed for bankruptcy relief under Chapter 13 which allows him to pay down his prepetition arrears through a Chapter 13 plan while

retaining possession and use of the Property. Because a sale of the Property has not occurred and the tenancy by the entirety remains intact, the valuation under *Popky* is not applicable. As in *Snyder*, the Court finds a 50% valuation of the Debtor's interest in the Property to be contrary to New York law which provides that an individual holding property by tenancy by the entirety is "seized" of the entire property at the time of conveyance.

Therefore, this Court adopts the reasoning in *Snyder* and finds the use of present value determination of the Debtor's interest in the Property in the context of § 522(f) to be improper as it not only fails to comport with New York law but it is also flawed and inappropriate for the additional reasons discussed below.

While the Debtor argues that he only has a contingent survivorship interest in the Property because the non-debtor spouse would presumably survive him, the Court does not have any information regarding the health of the Debtor and the non-debtor spouse to determine whether the actuarial values accounted for any known, pre-existing medical condition which would warrant a discount of the Debtor's interest in the Property. The Debtor's use of actuarial tables only attempts to estimate as to the present value of what the judgment lien creditor might recover at future date should the Debtor survive the non-debtor spouse. However, the means by which the Debtor's interest as a tenant by the entirety may terminate, whether by death, divorce, or sale, have not been determined as of the Petition Date. Any valuation based upon contingent future events is merely speculation that has no place in the context of § 522(f) because § 522(f) is not a prospective provision that takes into consideration future contingencies that may occur after the petition date.

Similarly, the Debtor's reliance on § 363(h) factors while seeking relief pursuant to § 522(f) of the Bankruptcy Code is misdirected and inapplicable given the differences in the purpose and framework between these two provisions of the Bankruptcy Code. Using an actuarial report for the purpose of § 522(f) is like using a crystal ball to prognosticate the future for the Debtor and his spouse; and therefore, it is inapplicable to § 522(f). In addition, while some courts in this district have permitted the use of actuarial values under § 363(h), such values were considered in determining the detriment to the non-debtor spouse as a result of a sale of tenancy by the entirety property free and clear of such spouse's interest. *In re Waxman*, 128 B.R. 49 (Bankr. E.D.N.Y. 1991); *In re Levenhar*, 30 B.R. 976 (Bankr. E.D.N.Y. 1983). In the context of § 522(f), where the debtor and the non-debtor spouse are retaining possession and use of the property, the non-debtor spouse does not suffer from any detriment that needs to be compensated as he or she would be under § 363(h). Moreover, while the bankruptcy estate generally benefits from any post-petition increase in the value of the property under § 363(h), the non-debtor spouse and the bankruptcy estate would not receive any benefit with respect to any such post-petition increase under § 522(f) because the amount of a judicial lien impairing a homestead exemption would be fixed by the value of the property on the petition date. Accordingly, an actuarial valuation under § 363(h) should not be superimposed onto a § 522(f) determination.

Under the calculations of § 522(f), the aggregate amount of R & E's lien and the mortgages ($445,627.27) plus the Debtor's $50,000 homestead exemption total $495,627.27. Because this amount does not exceed $900,000, the fair market value of

the Debtor's interest in the Property on the Petition Date, R & E's judgment lien does not impair the Debtor's homestead exemption.

Accordingly, the Court need not consider R & E's alternative argument that its judgment lien should not be avoided on the basis that the Debtor has other personal property to which the lien could attach even though no lien appears to have been perfected against such property before the Petition Date.

## CONCLUSION

For the reasons set forth above, the Debtor's Motion to avoid R & E's judgment lien under 11 U.S.C. § 522(f) is denied.

So ordered.

Dated:  Central Islip, New York
        July 24, 2007

                                          */s/ Dorothy Eisenberg*_____
                                          Dorothy Eisenberg
                                          United States Bankruptcy Judge